**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

GARRICK LASHUN MILLER                                                    PLAINTIFF

v.                                                                       No. 1:25CV86-SA-DAS

BRAD TAYLOR, ET AL.                                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner plaintiff's complaint filed under 42 U.S.C. § 1983. On December 5, 2025, the court issued an order [17] for the plaintiff to show cause why the instant case should not be dismissed with prejudice for failure to state a claim upon which relief could be granted. The plaintiff responded [20] to the order, and the matter is ripe for resolution. For the reasons set forth below, the court finds that the plaintiff has not shown cause, and the instant case will be dismissed with prejudice. In addition, the plaintiff's motion [19] for immediate release will be dismissed with prejudice.

**Discussion**

Many of the plaintiff's allegations are contradicted by the documents he has supplied with his various filings.[1] He was convicted on October 5, 2021, in the Chickasaw County Circuit Court for possession of a controlled substance (cocaine). Doc. 20-8. He was sentenced to eight years' incarceration, with eight years suspended, and he was placed on five years of supervised probation. *Id*.

The plaintiff alleges that on January 4, 2022, law enforcement officers conducted a warrantless

---

[1] As the plaintiff has supplied the documents to support his complaint, for the purposes of this memorandum opinion, the court will assume they are authentic and accurate.

no-knock raid and search of his home.[2,3]  Doc. 13-1, p. 2-3.  The plaintiff further alleges that he was not on probation or supervised release at the time.[4]  As a result of the search, law enforcement arrested Miller and confiscated 0.6 grams of alleged powder cocaine, two sets of digital scales, multiple clear baggies, a misdemeanor amount of marijuana (approximately 5 grams), two packs of syringes, and $2,130.76 in U.S. currency ($80.00 of which belonged to the Mississippi Bureau of Narcotics and had been used in a controlled purchase of narcotics earlier that day).  Doc. 1-7.  The funds were forfeited and seized and have not been returned to the plaintiff.[5]  Doc. 13-1, p. 2.  The plaintiff alleges that he filed a motion for return of property (the seized funds) with the trial court – but has not recovered the property.  *Id*.

Miller alleges that the Mississippi Department of Corrections (MDOC) has maintained a "fraudulent pen pack" that does not accurately reflect his prior convictions and the time he has served on each.[6]  *Id*. at p. 2-3.  He notes that the entry from January 21, 2022 (regarding his January 4, 2022, charge for possession of cocaine (Booking Number E)) shows no time to serve, no time suspended, and no time on probation.[7]  Doc. 13-5, p. 2.  He also notes that the pen pack reflects a parole setoff date of

---

[2] Contrary to this assertion, documents provided by the plaintiff show that the January 4, 2022, search was conducted pursuant to a warrant.  Doc. 1-7 (final page of affidavit stating that the search of the plaintiff's residence was conducted pursuant to a warrant).

[3] As the plaintiff has presented an amended complaint [13], the court notes that it supersedes the claims in any previous complaints and supplements.  The court has considered *allegations* only from the amended complaint; however, the court has considered various *exhibits* from the plaintiff's other submissions.

[4] As discussed in detail below, documents provided by the plaintiff show that he was, indeed, on post-release supervision (pursuant to his October 5, 2021, conviction for possession of a controlled substance) when the warrant was executed on January 4, 2022.

[5] The seizure was conducted pursuant to Miss. Code Ann. §§ 41-29-177, 41-29-107.1, and 41-29-179, and the plaintiff was served with process as to the forfeiture under Rule 4, Miss. R. Civ. P.  Doc. 20-10.

[6] A "pen pack" is a document summarizing a convict's prior convictions, the time served for each, and the time spent on probation or supervised release.  A pen pack can be introduced as evidence based upon the testimony of an official with knowledge of pen pack format and the type of information contained within it.

[7] This appears to be the result of the State's decision to seek revocation of Miller's PRS (arising out of his October 5, 2021 conviction for possession of cocaine), rather than prosecute him for the new January 2022 charge of possession of cocaine.  A revocation does not change the overall sentence, and his status as incarcerated means that the length of his incarceration changes each day.  As such, it appears that MDOC

April 11, *2010,* though his current incarceration arises out of a *2022* violation of the terms of his post-release supervision (PRS).[8]  Doc. 13-5, p. 1.  He relies upon these seeming anomalies to support his claim that he has been (and is being) unlawfully imprisoned.  Doc. 13-1.  Ultimately, all of Miller's claims (except the claim regarding the taking of his property) rest on his allegedly unlawful imprisonment, which seems to rely wholly upon entries in his pen pack, including those in Booking Number E.  As discussed below, however, the pen pack is merely a summary of the plaintiff's convictions – and of his terms of incarceration and periods of release on either probation or PRS.  His criminal judgments and revocation orders are the documents actually governing whether, at any given time, he was incarcerated or released on some form of probation or post-release supervision.

### The Plaintiff's Claims

Based upon these allegations, the plaintiff explicitly sets forth four claims for relief – and describes a fifth claim in his complaint:

(1) False imprisonment for 27 days – from his arrest on January 4, 2022, until his placement in MDOC custody on January 31, 2022.[9]

(2) Cruel and unusual punishment – from being imprisoned "unlawfully."

(3) Conspiracy to interfere with civil rights (equal protection of the laws and enjoying privileges and immunities) – arising out of "unlawful" imprisonment.

(4) Failure to prevent conspiracy to "unlawfully" imprison him.

(5) Taking of property without due process of law as a result of his January 4, 2022, arrest for

---

will not complete such an entry in a pen pack until he is released again on PRS or completes his entire sentence.  At that point, his term of incarceration for that period will be a fixed value.

[8] The 2010 parole setoff appears to be an entry from one of Miller's earlier convictions and sentences (which he has completed) – and thus has no effect on his current sentence.  Doc. 13-5, p. 1.

[9] According to the Criminal Docket, Miller's hearing to revoke PRS took place on January 21, 2022; his pen pack indicates that he entered MDOC custody ten days later on January 31, 2022.  Doc. 1-4, p. 4 (Criminal Docket); Doc. 1-5, p. 4 (pen pack).

possession of cocaine.

The plaintiff's first four claims rest solely on his contention that his arrest on January 4, 2022, and the 27 days of detention arising out of that arrest were unlawful.

### Taking of Property Without Due Process of Law

The plaintiff alleges that the defendants took his funds without due process of law after his January 4, 2022, arrest. The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the Parratt/Hudson doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed. Appx. 731 (5th Cir. 2011). Thus, the court must determine whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m)  Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

MISS. CODE ANN. § 11-46-9(1)(m).

At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012).

The unlawful taking of an inmate's property may violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss. May 17, 2022) (citing *Johnson v. King*, 85 So. 3d 307 (Miss. App. 2012)). Article 3, Section 17 provides:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

Miss. Const., Article 3, Section 17.

The circumstances in *Johnson* are legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson*, 85 So. 3d at 311-312 (Miss. Ct. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id*. The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. As such, the mug belonged to him, and he could lawfully possess it.

The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for its fair value. *Id*. Those facts mirror the facts in the present case, as, according to the plaintiff, he lawfully possessed the cash, and the defendants confiscated it from him without due

process.[10] As such, the plaintiff in this case has an adequate remedy under state law, and it appears that his claims in this Court for the taking of his property without due process of law must be dismissed *without prejudice* pursuant to the Parratt/Hudson doctrine.

### Miller's Arrest and Incarceration Were Lawful

The plaintiff alleges that the search of his home on January 4, 2022, was unlawful because it was conducted without a warrant and without probable cause. Doc. 13-1. He also alleges that he was held "without charges." *Id*. He further alleges that he was not "on any probation supervision." Doc. 13-1, p. 2. These allegations are at odds with the documents the plaintiff has presented in support of his complaint.

First, the January 4, 2022, search of the plaintiff's home was conducted pursuant to a warrant. Doc. 1-7 (final page of January 5, 2022, affidavit in support of seizing funds, stating that the search of the plaintiff's residence was conducted pursuant to a warrant). According to the affidavit (which was signed by the affiant and a state court judge), the warrant was supported by probable cause. *Id*. The Mississippi Bureau of Narcotics had conducted a controlled purchase of narcotics earlier that day using $80.00 identifiable cash – which was recovered during the search, along with 0.6 grams of cocaine. *Id*.

Further, as discussed above, Miller was clearly out of MDOC custody and was released on PRS at the time of his arrest and the search of his property. Doc. 13-2 (arrest warrant for revocation of post-release supervision). The arrest warrant notes that the plaintiff was convicted on October 5, 2021, for possession of cocaine and sentenced to 8 years' incarceration, with 8 years suspended, and *5 years of supervised release*. *Id*. In addition, the MDOC "pen pack" notes the same sentence:

---

[10] It appears that the defendants followed the forfeiture process set forth in Miss. Code Ann. §§ 41-29-177, 41-29-107.1, and 41-29-179. Hence, Miller likely enjoyed due process as to the seizure and forfeiture of the funds. However, for the purposes of this memorandum opinion and final judgment, the court will assume that the funds were seized and forfeited without due process.

8 years' incarceration, 8 years suspended, and *5 years "probation."* Doc. 13-5 (pen pack). Under his 2021 sentence, if he did not violate the terms of his PRS, it would expire on October 5, 2026. Clearly, he was on supervised release during the "raid" of January 4, 2022 (less than a year into his 5-year term of PRS).

In addition, Miller signed several documents acknowledging that he had been on PRS at the time of his arrest. On January 6, 2022, he signed a Waiver of Right to Preliminary Post Release Revocation Hearing (a clear acknowledgment that he was on PRS at the time of his arrest). Doc. 1-3, p. 1. That same day, he also signed two different documents entitled "Waiver of Rights to Notice and/or Waiting Period Prior To Preliminary Post Release Revocation Hearing" (again, twice more acknowledging that he was on PRS at the time). *Id*. at p. 2. Similarly, the Chickasaw County Circuit Court issued a warrant for Miller's arrest stating that "on the fifth day of October, A.D. 2021" the court had "placed [Miller] on supervised post release supervision for a term of Five (5) years." Doc. 13-2. The court then stated that it appeared that Miller "has not properly conducted himself, but has violated the conditions of his supervised probation in a material respect by … New Felony Crime x3." *Id*.

The criminal docket reflects two other documents clearly establishing that Miller was on PRS at the relevant time: (1) a January 7, 2022, Petition to Revoke PRS and Impose Suspended Sentence; and (2) a January 26, 2022, Order Revoking PRS Enhanced Habitual Offender. Doc. 1-4, p. 3-4. The plaintiff's documents show that, despite his bald assertion to the contrary, he was out of MDOC's physical custody and had been released on PRS at the time of his arrest and detention.

Finally, Miller was not held "without charges;" as stated on the Arrest Warrant, the "charge" was violation of the terms of his release on PRS (rather than a separate criminal charge).

Doc. 13-2.  This claim is also meritless.

**Miller's Claims Regarding Revocation of PRS Are Barred Under
the Supreme Court's Holding in *Heck v. Humphrey*, as Is His Request [19]
for a Temporary Restraining Order Seeking Immediate Release**

In this case, the plaintiff claims that the defendants improperly revoked his post-release supervision.  Doc. 13.  In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court clarified the relationship between actions under 42 U.S.C. § 1983 and *habeas corpus* proceedings.  There is no requirement of "exhaustion" of *habeas corpus* remedies in order to proceed on a claim under § 1983.  *Id.*  Instead, a § 1983 claim for damages that calls into question the lawfulness of conviction or confinement – or otherwise demonstrates the invalidity of the conviction or confinement – is not cognizable under § 1983 until such time as the plaintiff is able to:

> prove that the conviction or sentence has been *reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.*  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 114 S. Ct. at 2372 (emphasis added); *see also Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994).[11]

---

[11] Courts, including the Fifth Circuit, have extended the scope of *Heck* to include requests for declaratory and injunctive relief:

> While *Heck* dealt with a § 1983 claim for damages, the Court did not limit its holding to such claims.  And we see no reason why its rationale would not apply in a situation where a criminal defendant seeks injunctive relief that necessarily implies the invalidity of his conviction.  *See Edwards v. Balisok,* 520 U.S. 641, 648–49, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (leaving issue open).

*Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002), *abrogated on other grounds by Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011); *see also Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 1589, 137 L. Ed. 2d 906 (1997) (finding that *Heck* applies to requests for declaratory relief); *Clarke v. Stadler*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards*, 520 U.S. at 648) (applying *Heck* to request for injunctive relief which would, by its nature, all into question the length of a prisoner's sentence).

Only if the court finds that the plaintiff's § 1983 suit, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," should the § 1983 action be allowed to proceed. *See Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995). The rule in *Heck* also applies to a challenge to parole revocation because such a challenge calls into question the fact and duration of the plaintiff's confinement. *See Waller v. Collier*, 297 F. App'x 326, 327 (5th Cir. 2008) (not reported) (citing *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995)).

The plaintiff has attempted to skirt the holding in *Heck* by arguing:

> This action is not barred by *Heck v. Humphrey* because plaintiff does not challenge the validity of an existing conviction or sentence. Instead, he alleges there was never a valid sentence or conviction at all, as proven by the MDOC's own records showing a '00' year term. His claims, if successful, will not necessarily imply the invalidity of a conviction; they will demonstrate its total absence.

Doc. 13-1, p. 1-2.

Though the plaintiff is correct in stating that there was no additional "conviction or sentence" arising out of his January 4, 2022, arrest in this case, he has ignored the fact that there was, instead, a revocation of his PRS, which *is* subject to the rule in *Heck*. *See Waller, supra*.

In the present case, the plaintiff's success in his challenge to revocation of PRS (and his resulting incarceration) would necessarily draw into question the validity of the fact and duration of his confinement under the revocation order. His request [19] for an injunction requiring his immediate release would likewise call into question the duration of his confinement. Therefore, in order for the § 1983 cause of action to accrue, the plaintiff must "demonstrate that the [revocation] has already been invalidated," *Heck*, 114 S. Ct. at 2372. Miller has made no such showing; therefore, it appears that this allegation, as well as his motion [19] for immediate release, must be dismissed for failure to state a claim upon which relief could be granted under 28 U.S.C. § 1915(d). *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

**No Supervisor Liability**

Miller claims that the "supervisory defendants," whom he does not specifically identify, failed to prevent their subordinates from allegedly unlawfully imprisoning him. Doc. 13-1, p. 4-5. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed. Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, the plaintiff has not alleged that any of the unidentified supervisors affirmatively participated in the incident; nor has he described the facts of the incident, itself (the acts or omissions by each defendant leading to the plaintiff's alleged injury). In addition, he has not identified an unconstitutional policy that caused his alleged injuries. As such, it appears that the plaintiff's claims regarding the acts or omissions of the "supervisory defendants" should be dismissed with prejudice for

- 10 -

failure to state a claim upon which relief could be granted.

### The Plaintiff's Response [20] to the Court's Show Cause Order

In his response [20] to the court's show cause order, the plaintiff offers ten arguments to support his complaint:

(1)     The plaintiff does not seek review of state court judgments;

(2)     The record does not specify an adjudicated offense to support his incarceration;

(3)     The recusals of four state court judges in the circuit show that his challenges were rejected due to a "structural defect," rather than want of merit;

(4)     *Heck v. Humphrey* does not apply, because there is no valid conviction to support his incarceration;

(5)     The plaintiff's claim of unlawful seizure and detention is valid because there is no "governing court order" to support them;

(6)     The unspecified supervisor are liable, despite the *Parratt-Hudson* doctrine, because they adopted a custom of relying on "pen packs," rather than judicial rulings, to decide whether to arrest and detain him;

(7)     The transfer of venue in this case from the Southern District of Mississippi to this court caused "venue instability;"

(8)     The defendants are not entitled to qualified immunity;

(9)     The plaintiff seeks prospective and declaratory relief, which is permissible under *Heck*; and

(10)     The state court lacked jurisdiction to decide the plaintiff's revocation (in Chickasaw County) or the forfeiture of his money (in Monroe County) because the proceedings took place in different courts.

As discussed below, none of the plaintiff's issues and arguments in this response has merit.

- 11 -

The plaintiff first argues that he does not seek review of state court judgments. However, he, indeed, seeks review of his judgment of conviction in Chickasaw County for possession of a controlled substance – and the revocation of probation arising out of that judgment. Doc. 20-8.

He next argues that the record does not contain a "adjudicated offense" to support his incarceration; however, as discussed above, the record reveals the plaintiff's conviction for possession of a controlled substance and the parole revocation arising out of that conviction. Doc. 20-8.

Third, the plaintiff argues that the recusal of all state court judges in the circuit of conviction show that a "structural defect" led to the rejection of his challenges. This assertion is incorrect, as the circuit judges recused themselves because the plaintiff sued his attorney, who routinely practiced before the circuit judges. Doc. 20-7 (Order of Recusal of "all Judges of the First Circuit Court District.") Those judges recused themselves because of their familiarity with that attorney. *Id.*

Fourth, the plaintiff argues that *Heck v. Humphrey* does not apply to this case because there is no valid conviction to support his incarceration. As explained above, however, the record reveals a valid conviction for possession of a controlled substance and revocation of parole as to that offense. Doc. 20-8.

Fifth, the plaintiff argues that his claim of unlawful seizure of his person and subsequent detention is valid because "no governing court order" exists to support them. Again, his detention arises out of a valid conviction and parole revocation. Doc. 13-2 (arrest warrant for revocation of post-release supervision pursuant to conviction of possession of a controlled substance).

The plaintiff's sixth claim in his response to the show cause order is that the unspecified supervisors are liable, despite the *Parratt-Hudson* doctrine because they erroneously adopted a custom of relying on "pen packs," rather than judicial decisions, to decide whether to arrest and detain him. This claim is without merit, as Mississippi courts routinely rely on properly authenticated "pen packs"

to show a litigant's prior conviction and sentences:

> The preparation and management of pen packs are administrative in nature, and they only need to be certified by the custodian who maintains the records in the ordinary course of business. Accordingly, we find that testimonial evidence need not be proffered to authenticate pen packs. Finding no error, we affirm the circuit court's dismissal of Conwill's PCR petition.

*Conwill v. State*, 229 So. 3d 208, 210 (Miss. Ct. App. 2017).

Seventh, the plaintiff argues that the transfer of this case from the Southern District of Mississippi to this court led to a confusing "venue instability." However, as the Southern District discussed in its transfer order, either district may exercise jurisdiction over this case, and the Northern District of Mississippi is a proper form for this case. Doc. 20-9.

In his eighth claim, the plaintiff argues that the defendants are not entitled to qualified immunity. However, the court did not discuss the issue of qualified immunity in its show cause order [17]; as such, it is not a proper issue to raise in response to that order.

Ninth, the plaintiff argues that the Supreme Court's ruling in *Heck* does not apply to this case, as he seeks prospective and declaratory relief, neither of which are prohibited by *Heck*. However, the "prospective" and "declaratory" relief the plaintiff seeks is release from incarceration, which is barred by the Court's ruling in *Heck*.

Finally, the plaintiff argues that the state court lacked jurisdiction to decide his revocation (in Chickasaw County) or the forfeiture of his money (in Monroe County) because the proceedings took place in different courts. Regardless of the venue of these claims, the dispositive issue is that there is a legal remedy under state law for the taking of his property; as such, this federal court may not decide the issue. *See Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987).

In sum, none of the issues raised in the plaintiff's response to the court's show cause order has merit, and they will be dismissed with prejudice for that reason.

- 14 -

**Conclusion**

The plaintiff's allegations, including those presented in his response to the court's show cause order, do not state a valid claim under 42 U.S.C. § 1983.  As such, the instant case will be dismissed with prejudice for that reason.  In addition, the plaintiff's motion [19] for a temporary restraining order seeking immediate release will be dismissed with prejudice.

**SO ORDERED**, this, the 13th day of April, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE